# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| THE HERSHEY COMPANY and | : | |
| HERSHEY CHOCOLATE & | : | |
| CONFECTIONARY CORPORATION, | : | |
|     Plaintiffs | : | No. 1:18-cv-00843 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ANYKISS, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is the motion for default judgment (Doc. No. 24) filed by Plaintiffs the Hershey Company and Hershey Chocolate and Confectionary Corporation ("Plaintiffs") against Defendant Anykiss ("Defendant"). For the reasons that follow, the Court will grant the motion and defer the entry of judgment in favor of Plaintiffs until the receipt of additional information from Plaintiffs as to its request for attorney's fees and costs.

## I. BACKGROUND

Plaintiffs initiated the above-captioned action by filing a complaint against Defendant, a Ukrainian business, in this Court on April 18, 2018. (Doc. No. 1.) In their complaint, Plaintiffs assert the following causes of action: a violation of the Anticybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d) (Count I); unfair competition under the Lanham Act, codified at 15 U.S.C. § 1125(a) (Count II); and unfair competition in violation of Pennsylvania common law (Count III). (Id.) The complaint alleges that Defendant has interfered with the use of the KISSES ("KISSES") mark, which has the corresponding registration numbers 2,416,701 and 4,918,242 and pertains to Plaintiffs' widely known chocolate candy products and related merchandise sold throughout the world. (Id. ¶ 13.) Specifically, Plaintiffs allege that Defendant has been operating the internet domain <kisschocolaterie.com> (the "Offending Domain"), which Defendant uses "to advertise its business of selling chocolate

and confections under the name 'KISS chocolaterie.'" (Id. ¶ 24.) According to Plaintiffs, "Defendant purports to have founded its business in 2015, over 100 years after the first use of the KISSES mark[,]" and "[t]he Offending Domain advertises Defendant's business of selling competing chocolate goods." (Id. ¶¶ 25-26.) Plaintiffs further allege that "[t]he Offending Domain is interactive in that it allows consumers to purchase goods and to contact [] Defendant concerning the goods or franchise opportunities." (Id. ¶ 26.) In March of 2016, Defendant unsuccessfully applied for registration of its KISS CHOCOLATERIE ("KISS CHOCOLATERIE") mark with the United States Patent and Trademark Office, which denied the application on the ground of confusion with the KISSES mark. (Id. ¶ 27.) According to the complaint, Defendant subsequently abandoned this unsuccessful application. (Id.) Plaintiffs add that "Defendant has reached out to [Plaintiffs'] representatives in an effort to 'partner' with [Plaintiffs] by selling authorized Hershey products in its shop[,]" an invitation that Plaintiffs declined on the basis that they do not wish to enter into any such relationship with Defendant. (Id. ¶ 28.)

According to Plaintiffs, "[d]espite Defendant's clear knowledge of [Plaintiffs'] prior rights in the KISSES mark, Defendant wrongfully continued to use marks confusingly similar to the KISSES marks for the purpose of selling its competing chocolate products through the Offending Domain." (Id. ¶ 29.) Plaintiffs maintain that "[b]y using the KISSES marks (or marks confusingly similar thereto) in the Offending Domain, [] Defendant seeks to wrongfully benefit from the fame and goodwill associated with the KISSES marks for Defendant's commercial gain to [Plaintiffs'] detriment[,]" and that "[b]y making unauthorized use of the KISSES marks (or marks confusingly similar thereto) via the Offending Domain, Defendant's actions are diluting and/or tarnishing the goodwill that [Plaintiffs have] developed in the KISSES

2

marks, thereby causing damage to [Plaintiffs]." (Id. ¶¶ 30-31.) Plaintiffs assert that, in light of the above, Defendant's actions are willful and knowing, in addition to being indicative of "a bad faith intent to profit . . . from the use of the KISS CHOCOLATERIE mark and Offending Domain[,]" which has harmed and will continue to harm Plaintiffs. (Id. ¶¶ 32-34.)

A review of the docket reveals that Plaintiffs filed an affidavit of service as to Defendant on January 11, 2019, indicating that Defendant was served on August 28, 2018 (Doc. No. 13).[1] Defendant, however, did not appear, answer, move, or otherwise respond to Plaintiffs' complaint. Consequently, Plaintiffs filed a request with the Clerk of Court to enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) on February 21, 2019 (Doc. No. 15), which was granted on February 22, 2019 (Doc. No. 16). Plaintiffs filed the instant motion for default judgment on June 11, 2019 (Doc. No. 24), along with a brief in support thereof (Doc. No. 25). Because Defendant has not filed a response to the motion, the Court deems the motion unopposed. Accordingly, Plaintiffs' motion is ripe for disposition.

## II. LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2).

---

[1] As noted by Plaintiffs in support of the instant motion, Plaintiffs effected service as to Defendant pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters. (Doc. No. 25 at 2.)

3

Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). Yet, if the defendant has been properly served but fails to appear, plead, or defend an action, a court may "enter a default judgment based solely on the fact that the default occurred," without considering the Chamberlain factors. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) ("Consequently, before granting a default judgment, the Court must . . . ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." (citations omitted)). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though

they were established by proof." See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III. DISCUSSION

Having reviewed the record, including Plaintiffs' complaint, motion, and supporting brief, the Court finds that entry of default judgment against Defendant and in favor of Plaintiffs is appropriate. The Court examines the merits of Plaintiff's motion by addressing the sufficiency of Plaintiffs' allegations, the applicability of the Chamberlain factors, and the propriety of the relief requested in the complaint.

### A. Sufficiency of Plaintiffs' Allegations

As an initial matter, the Court observes that Plaintiff's unchallenged allegations in the complaint, taken as true, state a legitimate cause of action as to each of the three counts asserted in the complaint. First, the Court finds such allegations supportive of a claim under ACPA, which provides, in pertinent part, that:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that—
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]

5

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." adidas AG v. adidascitycup.com, No. 19-cv-61353, 2019 WL 4694077, at *3 (S.D. Fla. Aug. 14, 2019) (internal quotation marks omitted) (quoting Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006)). Plaintiffs' complaint sets forth sufficient allegations to support such a claim by alleging that: "[o]n information and belief, Defendant has registered, trafficked in, and/or used the domain name <kisschocolaterie.com> with a bad-faith intent to profit from the use of Plaintiffs' and KISSES marks"; "Defendant has no trademark or other intellectual property rights in the United States to the Offending Domain that can defeat the priority of the KISSES marks"; "[t]he Offending Domain does not consist of the legal name of Defendant or a name that is otherwise commonly used to identify Defendant"; "Defendant has made no prior use of the Offending Domain in connection with the bona fide offering of any goods or services, since all such uses infringe the famous KISSES marks" and "Defendant's attempts to 'partner' with [Plaintiffs] for its financial gain further demonstrates Defendant's bad-faith intent to profit from the Offending Domain." (Doc. No. 1 ¶¶ 36-38.) Accordingly, the Court finds that Plaintiffs have stated a legitimate cause of action against Defendant under ACPA.

In addition, the Court concludes that Plaintiffs have provided sufficient allegations to support their claims under the Lanham Act and for unfair competition under state law. As to Plaintiffs' Lanham Act claim asserted at Count II of the complaint, Plaintiffs have alleged that in

6

light of the facts discussed supra: "Defendant's activities, namely the unauthorized use of its KISS CHOCOLATERIE mark and the Offending Domain, which are confusingly similar to [Plaintiffs'] KISSES marks, are likely to cause confusion, mistake[,] or deception as to the source or origin of Defendant's goods and activities within the meaning of Section 43(a) of [t]he Lanham Act"; "Defendant's acts create the clear and false impression that Plaintiffs and Defendant are related, and/or that Defendant is part of Plaintiffs, and/or that Plaintiffs have approved or endorsed Defendant, its goods and/or activities, and the quality of its goods"; and "[t]his misrepresentation is likely to cause confusion, mistake, or deception as to the relationship, affiliation, connection[,] or association of Plaintiffs and Defendant in violation of Section 43(a) of The Lanham Act." (Doc. No. 1 ¶¶ 46-48.) Such allegations support a claim for unfair competition under the Lanham Act, which requires a plaintiff to satisfy the following three (3) elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." See Mister Softee, Inc. v. Amanollahi, No. 2:14-cv-01687, 2016 WL 5745105, at *8 (D.N.J. Sept. 30, 2016) (quoting A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000)). The Court similarly finds that Plaintiffs' complaint articulates a sufficient basis for a claim for unfair competition under Pennsylvania law, which may be asserted "where there is evidence of, among other things, trademark, trade name, and patent rights infringement." See Giordano v. Claudio, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010) (quoting Synthes (U.S.A.) v. Globus Med., Inc., No. 04-cv-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005)).

**B. Application of the Chamberlain Factors**

Additionally, the Court finds that the three Chamberlain factors weigh in favor of entering default judgment against Defendant. First, Plaintiffs will be prejudiced if the Court

7

declines to enter default judgment because Plaintiffs are unable to proceed with the instant action due to Defendant's failure to respond and have no other means of recovering against Defendant. See Broad. Music, Inc. v. Kujo Long, LLC, No. 14-449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) ("Plaintiffs will be prejudiced . . . by their current inability to proceed with their action due to [d]efendants' failure to defend."). Second, Defendant has not asserted a meritorious defense to Plaintiffs' claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to the instant motion. Consequently, the Court is unable to conclude from Defendant's silence that Defendant has a viable, litigable defense. See Laborers Local Union 158 v. Fred Shaffer Concrete, No.10-1524, 2011 WL 1397107, at *2 (M.D. Pa. Apr. 13, 2011). Third, the Court cannot discern from the record any excuse or justification for Defendant's default apart from Defendant's own culpability. Indeed, Defendant has failed to enter an appearance or file a timely answer to the complaint and has offered no reasons for its failure to do so. "A defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful." Innovative Office Prods., Inc. v. Amazon.com, Inc., No. 10–4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012). In the absence of any excuse or justification for Defendant's failure to participate in this litigation, the Court must conclude that the delay is the result of Defendant's culpable conduct. See Laborers Local Union 158, 2011 WL 1397107, at *2. Accordingly, the Court is satisfied that the Chamberlain factors counsel in favor of entering default judgment in favor of Plaintiffs and, therefore, will grant Plaintiffs' motion for default judgment.

### C. Plaintiffs' Requested Relief

In their complaint, Plaintiffs request that the Court issue an order as follows:

A. That the Court issue permanent injunctive relief in the form of an Order to VeriSign, Inc., that it shall immediately transfer the domain name from the OnlineNIC, Inc. registrar account referenced in the WHOIS records attached in Exhibit C to the registrar account for CSC Corporate Domains, Inc. ("CSC"), and for CSC to register the domain name in the name of Hershey Chocolate & Confectionery Corp.;

B. That the Court issue permanent injunctive relief against Defendant and that Defendant, its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with Defendant, be enjoined and restrained from registering, using, or trafficking in any domain name that is owned by Plaintiffs or that is identical or confusingly similar to any registered trademark owned by Plaintiffs;

C. That the Court award Plaintiffs actual damages, consequential damages, and statutory damages;

D. That the Court Order Defendant to disgorge all ill-gotten gains, and that any such ill-gotten gains be paid over to Plaintiffs;

E. That the Court award Plaintiffs its attorneys' fees and costs; and

F. That the Court grant Plaintiffs all other relief to which they are entitled, and such other or additional relief as is deemed just and proper.

(Doc. No. 1 at 16.) The Court addresses these various forms of requested relief in turn.

### 1. Injunctive Relief

As noted above, Plaintiffs request injunctive relief in the form of an order transferring the domain name as to the Offending Domain, as well as an order prohibiting the use of any domain name owned by Plaintiffs or confusingly similar to any of Plaintiff's trademarks. To establish entitlement to permanent injunctive relief, a plaintiff must demonstrate that the following elements have been satisfied: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." See eBay Inc. v. MecExchange, L.L.C., 547 U.S. 388, 391 (2006) (citing Weinberger v.

9

Romero—Barcelo, 456 U.S. 305, 311–313 (1982); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). The Lanham Act specifically authorizes permanent injunctive relief in the context of a claim for trademark infringement. See 15 U.S.C. § 1116.

The Court finds that, under the authority described above, permanent injunctive relief is warranted. First, Plaintiff has demonstrated: (1) the existence of an irreparable injury due to confusion with its KISSES mark allegedly caused by Defendant; (2) that monetary remedies are not adequate to compensate Plaintiff for such an injury because Defendant's conduct appears to be ongoing; (3) equitable relief is warranted on balance of the hardships faced by both Plaintiffs and Defendant, for Plaintiffs have alleged a serious injury; and (4) ordering such relief would not disserve the public interest because such relief would remedy the harm caused by Defendant's conduct. See eBay, 547 U.S. at 391; see also CrossFit, Inc. v. 2XR Fit Sys., LLC, No. 2:13-cv-1108, 2014 WL 972158, at *9-11 (D.N.J. Mar. 11, 2014) (awarding injunctive relief in the context of a default judgment as to a trademark infringement action). Accordingly, the Court will grant Plaintiffs' request for permanent injunctive relief as set forth in their complaint. (Doc. No. 1.)

### 2. Damages

As to their ACPA claim asserted at Count I specifically, Plaintiffs request a damages award of $100,000 in statutory damages by operation of 15 U.S.C. § 1117, in addition to attorney's fees. (Id. at 12.) Section 1117(a) provides that for a violation of Section 1125(d), a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." See id. § 1117(a). This section further states that:

> The [C]ourt shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the [C]ourt may enter judgment,

> according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the [C]ourt shall find that the amount of the recovery based on profits is either inadequate or excessive the [C]ourt may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The [C]ourt in exceptional cases may award reasonable attorney fees to the prevailing party.

Id. In light of the applicable statutory section, as well as pertinent case law, the Court finds that the requested statutory award of $100,000 as to Count I is warranted. Defendant's conduct – evidenced by its continued use of the Offending Domain and notice of the Offending Domain's potential for confusion with Plaintiffs' KISSES mark – warrants an award of $100,000, which the Court may exercise its discretion to award. See Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002) (awarding $100,000 in damages as to infringing domain name); Electronics Boutique Holdings Corp. v. Zuccarini, No. 00-cv-4055, 2000 WL 1622760, at *9 (E.D. Pa. Oct. 30, 2000) (awarding $100,000 in statutory damages per infringing domain name). The Court, therefore, will award Plaintiffs $100,000 in statutory damages as to Count I of the complaint.[2]

### c. Attorney's Fees and Costs

As noted previously, Plaintiffs also request an award of attorney's fees and costs. Under 15 U.S.C. § 1117, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." See 15 U.S.C. § 1117(a). "'Exceptional' has been interpreted . . . to mean an action involving culpable conduct." Delta Air Lines, Inc. v. Fly Tech, LLC, No. 16-cv-2599, 2018 WL 1535231, at *5 (D.N.J. Mar. 29, 2018) (citing Securacomm Consulting, Inc. v.

---

[2] Plaintiffs do not appear to request additional damages (Doc. No. 1), and their supporting brief does not allude to any specific damages as to Counts II or III. Accordingly, the Court limits its damages award to $100,000 in statutory damages as to Count I.

Securacomm, Inc., 224 F.3d 273, 280 (3d Cir. 2000)). Willful infringement on the part of a party, however, does not automatically render a case exceptional. See Luxottica Grp., S.p.A. v. Shore Enuff, No. 16-cv-5847, at *9 (D.N.J. Aug. 27, 2019) ("Nonetheless, the Court weighs the lack of evidence regarding defendants' culpable or unreasonable behavior in litigating this case as part of the totality of the circumstances. Put simply, it does not equate [willful] infringement as exceptional behavior." (citing J&J Snack Foods Corp. v. The Earthgrains Co., No. 00-cv-6230, 2003 WL 21051711 at *3 (D.N.J. 2003))). While this Court, therefore, is not required to find that the case at bar is an exceptional one, the Court agrees with Plaintiffs that the instant case is "exceptional" for purposes of recovery of attorney's fees and costs, as demonstrated by the facts in the complaint alleging willful infringement by Defendant after having its application for registration denied. Accordingly, the Court will award Plaintiffs attorney's fees and costs upon receipt of an itemized statement from Plaintiffs setting forth the attorney's fees and costs sought.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Plaintiffs' motion for default judgment. (Doc. No. 24.) An appropriate Order follows.